UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| MISTY DENHAM, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO.: 1:09-CV-04 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Misty Denham appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Denham applied for benefits on February 17, 2004, and again on October 4, 2004, alleging that she became disabled as of September 30, 2003. (Tr. 75-76, 83-84.) The Commissioner denied her application initially and upon reconsideration, and Denham requested an administrative hearing. (Tr. 13.) Administrative Law Judge ("ALJ") Bryan Bernstein conducted a hearing on June 28, 2007, at which Denham, who was represented by counsel, and Joseph E. Havranek, a vocational expert ("VE") testified. (Tr. 501-25.)

On September 18, 2008, the ALJ rendered an unfavorable decision to Denham, concluding that she was not disabled because she could perform a significant number of jobs in

---
[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

1

the national economy despite the limitations caused by her impairments. (Tr. 10-21.) The Appeals Council denied Denham's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 6-8.) Denham filed a complaint with this Court on January 5, 2009, seeking relief from the Commissioner's final decision. (Docket # 1.) On appeal, Denham argues that the ALJ improperly evaluated the opinion of Dr. Henry Martin, an examining physician, and improperly discredited the credibility of her symptom testimony. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Br.") 13-17.)

## II. FACTUAL BACKGROUND[2]

### A. Background

Denham was thirty one years old on the date of the hearing decision. (Br. 2.) She had no past relevant work experience. (Tr. 19.) Denham alleges that she is disabled due to Bipolar Disorder.[3] (Br. 2.)

### B. Summary of Relevant Medical Evidence

From September 2003 to the time of the hearing, Denham was seen at the Medication Clinic at the Grant-Blackford Mental Health Center. (Tr. 326-36, 393-410.) In September 2003, Denham was first evaluated by treating physician Dr. Leon Kuhs. (Tr. 336.) Dr. Kuhs diagnosed her with panic disorder and bipolar disorder, placed her on medication (Ativan and Trazadone),

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 500-page administrative record necessary to the decision.

[3] Bipolar disorder is a disease of the nervous system that involves the brain and the body. "Bipolar" refers to the two psychological states of mania and depression that are associated with the illness. Although many people with this disorder may have mainly manic or mainly depressive episodes, there is usually a mixture of symptoms at any given time. *See* WES BURGESS, THE BIPOLAR HANDBOOK 1-2 (2000).

and assigned a Global Assessment of Functioning ("GAF") Score of 65.[4] (Tr. 336.) In December 2003, Dr. Kuhs noted that Denham was doing very well on her medication. (Tr. 332.) On March 10, 2004, Denham complained of difficulty sleeping and mood swings, so Dr. Kuhs added Topamax to her medication regime. (Tr. 331.) When Denham next saw Dr. Kuhs on April 12, 2004, he noted that she was doing "fairly well." (Tr. 321.) During her June 8, 2004 visit, Dr. Kuhs noted that Denham was "[a]ctually . . . doing fairly well on this combination [of medication] and is in more than partial remission. She seems to be doing quite well at this time." (Tr. 330.) Dr. Kuhs again noted on August 17, 2004, that her bipolar disorder seemed to be in remission. (Tr. 330.)

Denham also saw consulting examiner Dr. Robert Fischer on April 22, 2004, for a psychological examination at the request of the Social Security Administration. (Tr. 182-84.) Denham told Dr. Fischer that she suffered from bipolar disorder and often suffers from panic attacks. (Tr. 182.) Dr. Fischer noted that she was able to attend to personal hygiene and household maintenance activities. (Tr. 183.) He noted that "[t]he symptoms she was able to acknowledge are not terribly supportive of bipolar disorder." (Tr. 184.) He further opined that he was "not sure if it is medication effect or not, but she certainly does not seem to have the classic symptoms of bipolar disorder." (Tr. 184.) Dr. Fischer ultimately diagnosed Denham with anxiety disorder, cyclothymic disorder, intermittent explosive disorder, and dependence on nicotine and cocaine; ruled out panic disorder and bipolar disorder; and assigned a GAF Score of 60. (Tr. 184.)

---

[4]A GAF score measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. *See* Diagnostic & Statistical Manual of Mental Disorders - Text Revision 32 (4th ed. 2000). The higher the GAF score, the better the individual's psychological, social, and occupational functioning. A GAF Score of 65 indicates an individual that has some mild symptoms or some difficulty in social, occupational, or school functioning, but is generally functioning pretty well, and has some meaningful interpersonal relationships.

Denham's records were examined by Dr. W. Shipley, a non-examining state agency psychologist. (Tr. 185-200.) Dr. Shipley concluded that Denham did not have severe mental impairments. (Tr. 185.) He found that Denham would be only mildly limited in the activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (Tr. 195.) He found her partially credible and believed that she was able to do a wide range of tasks but chose to have her mother do many of them instead. (Tr. 199.)

Denham was examined by Dr. Henry Martin on January 4, 2005, at the request of the Social Security Administration. She told Dr. Martin that she had been diagnosed with bipolar disorder and that her main problem was experiencing anxiety attacks while in public. (Tr. 278.) She indicated to Dr. Martin that her medication did help her with the panic attacks. (Tr. 278.) Dr. Martin found her to be of average to below average intelligence with an intact memory. (Tr. 278.) He noted that she was depressed and socially withdrawn. (Tr. 278.) Denham told Dr. Martin that her daily routine involved sleeping one-and-a-half to two hours at no set schedule and watching television. (Tr. 278.) Dr. Martin diagnosed her with bipolar disorder, generalized anxiety disorder, and a mixed personality disorder and assigned a GAF Score of 40.[5] (Tr. 280.)

On February 15, 2005, Dr. D. Unversaw completed a Psychiatric Review Technique form and a Mental Residual Functioning Capacity questionnaire. (Tr. 289-308.) Dr. Unversaw found that Denham had mild limitations in her activities of daily living, maintaining social functioning, and in maintaining concentration, persistence, and pace. (Tr. 299.) In making his Mental Residual Functional Capacity Assessment, Dr. Unversaw found that Denham was "not

---

[5] A GAF Score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.

4

significantly limited" in eighteen out of twenty categories and was only "moderately limited" in two categories: the ability to work in coordination with or proximity to others without being distracted by them and the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 305-06.) He found that her progress notes indicated that she was responding well to treatment but that she still had some interpersonal difficulties. (Tr. 307)

Denham was also repeatedly seen by Dr. Dennis Ugbama at the Medication Clinic from 2004 to 2006. (Tr. 326-29, 393-400.) During her January 19, 2005, visit, Dr. Ugbama downgraded Denham's diagnosis of bipolar disorder to mood disorder NOS, panic disorder with agoraphobia, and cocaine dependence in remission. (Tr. 328.) He noted: "Reviewing her symptoms over the past years, does not show her meeting any criteria for Bipolar Disorder. . .." (Tr. 328.) On April 17, 2006, Denham reported to Dr. Ugbama that she was not experiencing any depressive symptoms and overall felt that she was doing well. (Tr. 395.) Denham's October 20, 2006, treatment notes from the Medication Clinic show that she was not experiencing any manic or depressive episodes, was getting a good night's sleep, had no appetite problems, and was maintaining well on her medications. (Tr. 394.)

## C. Denham's Hearing Testimony

On June 28, 2007, Denham appeared with counsel and testified before ALJ Bryan Bernstein. (Tr. 501-25.) Denham began by describing her educational history and work history. (Tr. 505-6.) She stated that she attended high school but did not finish eleventh grade. (Tr. 505.) She indicated that she held a telemarketing job while in high school but has not held a job for more than three months since. (Tr. 505.) Denham testified that whenever she tried to work she was fired for not following through on what she was supposed to do or she had anxiety attacks

5

and simply went home. (Tr. 506.) She maintained that she was unable to sustain employment due to her anxiety and bipolar disorder.

Denham testified that she has had two or three day-long panic attacks every week since the age of seventeen. (Tr. 506.) She stated that when she is experiencing these attacks, she is unable to perform any work. (Tr. 507.) Denham then testified about her diagnoses of bipolar disorder and depression. She testified that her conditions will cause her to be very angry and then she will become upset and cry without knowing why. (Tr. 508.) She stated she also suffers from mood swings, has difficulty sleeping, and has a low energy level. (Tr. 508-9.) Denham also stated that she has difficulty in concentrating and finishing activities she starts. (Tr. 509.)

Denham testified that during an average day she would feed her baby in the morning and then either go back to sleep or watch television. (Tr. 513.) She stated that her fiancé does most of the housework, shopping, and child care. (Tr. 513.) Denham claimed that she frequently forgets to do the housework or loses focus after beginning. (Tr. 514.)

Finally, Dr. Joseph Havernak, the VE, testified about what types of work Denham may be able to carry out. (Tr. 520-24.) The ALJ asked the VE to consider an individual who is unable to do work that requires a close regimentation of production or close regimentation of work activities. (Tr. 520.) The ALJ also instructed the VE to consider that the individual would be unable to address work that imposes intense contact with the public or strangers. (Tr. 521.) The VE testified that Denham could find work at the unskilled, light exertional level. At the light exertional level, Denham could work as a laundry folder (200-250 jobs in the Fort Wayne, Indiana regional area), a mail clerk (300-400 jobs), and a trimmer of plastic parts (300-400 jobs). (Tr. 522.) The VE also testified that in the entire state of Indiana, there exist approximately

6

1500-2000 jobs as a laundry folder, 2000-2500 jobs as a mail clerk, and 750-1000 jobs as a trimmer of plastic parts. (Tr. 522.) The VE and the ALJ acknowledged that if this person missed two days per week due to panic attacks, they would be unable to sustain competitive employment. (Tr. 523.) They also acknowledged that an individual who was unable to perform simple, repetitive tasks and had difficulty interacting with others would not be able to perform these jobs. (Tr. 523.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

7

## IV. ANALYSIS

### *A. The Law*

Under the Act, a claimant is entitled to SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See* 20 C.F.R. § 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[6] Before performing steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

8

Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On September 18, 2008, fifteen months after the initial hearing, the ALJ rendered his opinion. (Tr. 10-21.) He found at step one of the five-step analysis that Denham had not engaged in substantial gainful activity since her application date. (Tr. 15.) At step two, he determined that her condition qualified as a severe impairment. (Tr. 15.) At step three, he determined that Denham did not have an impairment or combination of impairments that was severe enough to meet a listing. (Tr. 15.) Before proceeding to step four, the ALJ found that her disability allegations and testimony were not reliable. (Tr. 16-17.) Additionally, the ALJ determined that Denham had the following RFC:

> This individual is not able to perform work that imposes a close regimentation of production. Close regimentation of work activity is the consequence of certain operational demands for functioning within close tolerances or for an unusually rapid level of productivity. This might be required when there is a high value placed on the product quality, the raw materials, the equipment employed or upon coordination with other workers and the pace of production. Close and critical supervision in this context would produce unacceptable distress. This work is different from jobs that allow the employee some independence in determining either the timing [of] different work activities, or the place of the work. Such flexibility in the work structure permits the employee an opportunity to catch up with the ordinary productivity, especially when there has been a respite.
>
> This individual is also unable to address work that imposes intense contact with the public or strangers. Such a position exposes a person to the emotional challenges of strangers who may have a personal response that disturbs sensitive employees. For example, customers with emergencies or extreme dissatisfaction with service or products can display emotions that make public contact very uncomfortable.

(Tr. 18-19.)

The ALJ found at step four that Denham had no past relevant work. (Tr. 19.) At step

five, he concluded that there are a significant number of jobs with a light exertional level in the national economy that Denham could perform, such as a laundry folder (200-250 jobs), a mail clerk (300-400 jobs), and a trimmer of plastic parts (300-400 jobs). (Tr. 20.) He therefore concluded that Denham was not under a disability at any time from the alleged onset date through the date of the decision, and her claim for benefits was denied. (Tr. 20.)

*C. The ALJ Properly Evaluated the Testimony of Dr. Henry Martin.*

Denham first argues that the ALJ improperly evaluated the opinion of Dr. Henry Martin, an examining physician. (Br. 13.) She claims that the ALJ's decision not to give persuasive weight to Dr. Martin's opinion because he found that Dr. Martin was unaware of her extensive substance abuse and because it was inconsistent with the medical evidence was reversible legal error. (Br. 13.) Denham's argument ultimately falls short of warranting a remand.

The Commissioner must "evaluate every medical opinion [he] receive[s]." 20 C.F.R. § 416.927(d). The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 416.927(d)(2). Unless the ALJ gives controlling weight to a treating source's opinion, all other medical opinions must be evaluated pursuant to factors set forth in 20 C.F.R. § 416.927(d). *See* SSR 96-2p; *see generally White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005); *Windus v. Barnhart*, 345 F. Supp. 2d 928, 939-43 (E.D. Wis. 2004). These factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the physician is a specialist; and (6) any other

factors brought to the attention of the Commissioner. 20 C.F.R. § 416.927(d); *see also Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).

In the present case, the ALJ discounted Dr. Martin's opinion because it was inconsistent with the other medical evidence and it did not demonstrate significant insight or reflect critical analysis during his examination. (Tr. 18.) As an example of these deficits, the ALJ contrasted Dr. Martin's diagnosis of bipolar disorder and his assignment of a GAF Score of 40 with both treating physician Dr. Kuhs's diagnosis of mood disorder and panic disorder and assignment of a 65 GAF Score (Tr. 17-18) and consulting examiner Dr. Fischer's finding that despite Denham's substance abuse problems "she retained significant residual capacity." (Tr. 18.) The ALJ also noted that Dr. Martin was unaware of Denham's extensive drug use and how this might have influenced her mental health. (Tr. 18.)

This well-reasoned treatment of Dr. Martin's opinion, however, does not deter Denham from finding fault with the ALJ's determination. She argues that Dr. Martin was, in fact, aware of her substance abuse and that "substance abuse disorders are simply not among the evidentiary factors that the regulations identify as probative when the ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability." (Br. 13.) Denham also claims that "although the Ativan helped significantly with her anxiety, especially the panic attacks, the treatment was not going as well with her bipolar disorder . . . ." (Br. 13-14.) Finally, Denham argues that while Dr. Fischer diagnosed her with cyclothymic disorder, Dr. Martin diagnosed her with bipolar disorder and "bipolar disorder is much more serious in nature." (Br. 14.)

Denham's arguments do not rise to the level of warranting a remand. Denham first claims that Dr. Martin was aware of her substance abuse and that, in any event, a substance

abuse disorder is not a factor the ALJ can consider when analyzing a physician's expert opinion. (Br. 13.) Denham relies on *Brueggeman v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) to distill the broad rule that as a matter of law an ALJ cannot consider whether a claimant's physician was aware of her substance abuse while evaluating the reliability of that physician's opinion. (Br. 13.)

Denham's argument misstates the holding in *Brueggeman*, which, in any event, is not controlling law. *Brueggeman* involved the specific process with which a claimant's substance abuse is considered when making the overall determination of disability.[7] 348 F.3d at 692-95. The Eighth Circuit Court of Appeals found error when the ALJ deviated from the regulations and found the claimant not disabled after excluding medical opinions that presented evidence of the disabling effects of his substance abuse. *Id*. They held that the regulations required the ALJ to make the initial disability determination "without deductions for the assumed effects of substance use disorders." *Id*. at 694.

Here, by contrast, these regulations are not even implicated because the ALJ never found that Denham was not disabled because of her substance abuse. Rather, the ALJ merely gave less weight to Dr. Martin's opinion because he found him unaware of Denham's extensive substance abuse; in essence finding that Dr. Martin did not have all of the relevant medical information

---

[7] A claimant must be found to be not disabled if her drug or alcohol abuse is a "contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(1)(J); 20 C.F.R. § 416.935; *Williams v. Astrue*, No. 1:06-cv-1444, 2007 WL 2362978, at *5 (S.D. Ind. Aug 13, 2007). In such cases, the ALJ first makes his disability determination under the five step process. 20 C.F.R. § 416.935; *Sparks v. Astrue*, No. 3:08-cv-210, 2009 WL 2914106, at *6 (N.D. Ind. Sep. 3, 2009). If the ALJ finds that the claimant is disabled, he must next decide which of the claimant's limitations would remain absent the substance abuse. 20 C.F.R. § 416.935. The ALJ must then determine which, if any, of the remaining limitations would be disabling on their own. *Id*.; *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006) ("When an applicant for disability benefits has both a potentially disabling illness and is a substance abuser, the issue for the [ALJ] is whether, were the applicant not a substance abuser, she would still be disabled.").

when he made his diagnoses. (Tr. 18.) *See* 20 C.F.R. § 416.927 ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). The ALJ should consider "the extent to which an acceptable medical source is familiar with the other information in [the claimant's] case record . . . in deciding the weight to give to a medical opinion." 20 C.F.R. § 416.927.

Rather, the ALJ gave persuasive weight to the opinions of treating physician Dr. Kuhs and consulting examiner Dr. Robert Fischer. (Tr. 17-18.) To the extent that the record contains conflicting evidence concerning the severity of Denham's mental limitations, it is the ALJ's role to weigh the conflicting medical evidence and resolve the conflicts. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

Indeed, the aptly named "treating physician rule" provides that the ALJ *must* give controlling weight to the opinion of a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608-09 (7th Cir. 2008) *(*quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)); *see* 20 C.F.R. § 416.927. Here, the ALJ correctly followed the treating physician rule. He gave controlling weight to Dr. Kuhs' opinion (as well as the similar opinion of Dr. Fischer) that Denham did not face serious limitations because it was well supported by the medical evidence and not inconsistent with the other substantial evidence. (Tr. 17-19.)

Given the inconsistencies with the record as a whole and Dr. Martin's apparent lack of insight into the serious effects of Denham's substance abuse, substantial evidence supports the ALJ's decision to assign his opinion less weight. *See Berger*, 516 F.3d at 545.  The ALJ instead followed the treating physician rule and adopted the opinion of Dr. Kuhs, as well as that of consulting examiner Dr. Fischer. (Tr. 17-19.)  Though Denham may wish that the ALJ had given more weight to Dr. Martin's opinion, his reliance on the treating physician rule was far from error.  Accordingly, the Court will not disturb the ALJ's opinion by re-weighing the evidence or substituting its judgement for that of the ALJ. *See Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000) ("[W]e cannot reweigh the evidence or substitute our own judgment for that of the ALJ.  If reasonable minds can differ as to whether [the claimant] is disabled, we must uphold the decision under review." (citations omitted)).

Denham's final two arguments regarding Dr. Martin's opinion amount to little more than a plea for this Court to itself re-weigh the evidence.  She claims that "although the Ativan helped significantly with her anxiety, especially the panic attacks, the treatment was not going well as with her bipolar disorder." (Br. 13.)  She also finds error because "Dr. Martin diagnosed bipolar disorder while Dr. Fischer found Cyclothymic disorder with only a rule out diagnosis of bipolar disorder.  As a general rule bipolar disorder is much more serious in nature." (Br. 14.)

As discussed above, however, the ALJ appropriately followed the treating physician rule and gave persuasive weight to the opinion of Dr. Kuhs, as well as the similar opinion of consulting examiner Dr. Fischer.  Denham points to two pieces of evidence that she believes suggest that she is more impaired than Dr. Kuhs and Dr. Fischer found.  The ALJ, however, disagreed and relied on the opinion of Denham's treating physician and the consulting examiner.

14

*Richardson*, 402 U.S. at 399. This Court will not re-weigh the evidence or substitute its own judgement for the ALJ, *Schmidt,* 201 F.3d at 972, especially considering that the ALJ correctly followed the treating physician rule. Absent legal error or a "patently wrong" decision, the Court will not remand the case simply in hopes that a new ALJ will view the same evidence in a different light. *See Young v. Barnhart*, 362 F.3d 995,1001 (7th Cir. 2004); *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

### D. The ALJ's Credibility Determination Will Not Be Disturbed.

Denham next asserts that the ALJ committed error by improperly evaluating the credibility of her symptom testimony. (Br. 14.) Specifically, she believes that the ALJ erred in discrediting her testimony "because of her substance abuse, a lack of a medically determinable impairment to explain her headaches, and her defensive demeanor." (Br. 14.)

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers*, 207 F.3d at 435. If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence to "at least . . . a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . .").

15

The ALJ specifically took note of Denham's credibility throughout his decision and devoted a full page to the question. (Tr. 16-17.) He recounted Denham's testimony, noting for example that she claimed to be unable to function without help from her family. (Tr. 16-17.) "[Denham] testified that she begins housework, but forgets what she is doing. She stated that she gets up and feeds the baby, then watches some television." (Tr. 17.)

Despite this testimony, the ALJ did not assign much weight to Denham's testimony. He concluded that:

> The claimant's testimony did not describe consistent problems, but included anecdotes about recent events which she implied represented her general condition. The evidence does not support such accounts of her condition. The claimant does have a medically determinable impairment that is associated in others with symptoms the claimant alleges, however, the evidence does not support her assertion of the severity of her condition. Thus, the claimant's testimony is not sufficient to support the severity of her symptoms.       .

(Tr. 17.)

Denham finds fault with this rather cogent and concise determination. Denham first argues that the ALJ committed legal error by discrediting her testimony based on her substance abuse, broadly claiming that "[t]he fact that substance abuse aggravates a claimant's mental illness does not prove that the mental illness is not disabling." (Br. 16) (citing *Kangail*, 454 F.3d at 629).

Denham's argument is unpersuasive. *Kangail* did not directly deal with the ALJ's narrow credibility determination, but rather with his overall determination of disability. In that case, the ALJ originally found (and the district court agreed) that the claimant's substance abuse was the *cause* of her disability and denied benefits on that basis. *Kangail*, 454 F.3d at 628. The Seventh Circuit Court of Appeals found error when the ALJ inferred from the improvements in

the claimant's condition when she was no longer abusing drugs that her only problem was substance abuse. "[I]n so concluding, [the ALJ] rejected abundant medical testimony [about independent conditions] without giving adequate reasons for doing so; he 'played doctor,' as the cases say." *Id*. at 629 (citing *Clifford*, 227 F.3d at 870; *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)).

In contrast, Denham's undeveloped argument here is apparently claiming that the ALJ should not have considered her substance abuse at all when forming his credibility determination. Denham's argument improperly attempts to conflate the role of substance abuse in the determination of disability with the ALJ's ability to evaluate the claimant's credibility.

Denham does not point to any case law or regulation that specifically prohibits the ALJ from considering substance abuse when making his credibility determination. Rather, SSR 96-7p directs the ALJ to consider "the entire case record" and any "[f]actors that precipitate and aggravate the symptoms." *See* 20 C.F.R. § 416.929(c)(3). Indeed, courts have found that the ALJ did not err when he found that claimants' substance abuse harmed their credibility. *Schultz v. Astrue*, No. 3:09-cv-06, 2009 WL 3642752, at *4-5 (N.D. Ind. Oct. 28, 2009) (finding no error where substance abuse was considered as part of credibility determination); *Davis v. Astrue*, No. 1:08-cv-821, 2009 WL 1312403, at *9 (S.D. Ind. May 11, 2009) (finding no error after ALJ considered as part of credibility determination that claimant was a "known drug seeker"). Given that the ALJ is in the best position to evaluate the credibility of a witness, the Court gives special deference to his determination, *Powers,* 207 F.3d at 435, and although Denham may disagree with the ultimate weighing of the evidence, such disagreement is not a basis for remand. *See Young*, 362 F.3d at 1001; *Flener*, 361 F.3d at 447; *Powers*, 207 F.3d at 435.

Denham next argues that since bipolar disorder is associated with headaches, there was a medically determinable impairment that could be expected to cause her headache symptoms. (Br. 16.) She believes the ALJ erred by finding that she did not have such a medically determinable impairment. (Br. 16.) Her argument, however, overlooks several crucial pieces of the ALJ's opinion and does not warrant a remand.

Although the ALJ did initially state that there was no medically determinable impairment that could have caused Denham's headaches (which should have ended this phase of the inquiry and removed the need for a credibility analysis, *see* 20 C.F.R. § 416.929(b), (c); SSR 96-7p), he then proceeded to do the credibility analysis anyway, *as if there were a medically determinable impairment*. He therefore then considered the "intensity, persistence, and limiting effects of [Denham's] symptoms to determine the extent to which the symptoms limit [her] ability to do basic work activities." SSR 96-7p. He discussed Denham's activities of daily living, as well as the objective medical evidence and inconsistencies in her testimony. (Tr. 16-17.) He found that although her headache complaints stretched over a long period of time and she did seek medical treatment, the headaches did not rise to the level of a severe impairment. (Tr. 16-17.)

Accordingly, Denham's argument that the ALJ erred by not considering that her headaches could be a medically determinable impairment is not supported by the record. Although the ALJ initially stated that she did not have such an impairment, he conducted the credibility analysis as if she did, ultimately finding her allegations not credible. Denham offers no compelling evidence that this credibility determination was in error. The ALJ's decision cannot be said to be "patently wrong" and the Court will not remand the case simply in hopes that a new ALJ will view the same evidence in a different light. *See Young*, 362 F.3d at 1001;

18

*Flener*, 361 F.3d at 447; *Powers*, 207 F.3d at 435.

Finally, Denham believes the ALJ erred when discrediting her based on her demeanor at the hearing. Despite what Denham argues, the ALJ may appropriately consider the demeanor of the claimant when making his credibility determination. *Neave v. Astrue*, 507 F.Supp. 2d 948, 962 (E.D. Wis. 2007) ("Generally, the court must defer to an ALJ's credibility determination because he had the opportunity to personally observe the claimant's demeanor at the hearing"); *see also Windus v. Barnhart*, 345 F. Supp. 2d 928, 945 (E.D. Wis. 2004).); *see also Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("completely proper in making credibility determinations" in social security case for ALJ to rely on claimant's demeanor). The ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p. Considered with the ALJ's other reasons for discounting Denham's credibility, his partial reliance on Denham's demeanor cannot be said to be "patently wrong," *Powers*, 207 F.3d at 435, and the Court will not re-weigh the evidence in the hope that it will come out in Denham's favor this time. *See Flener*, 361 F.3d at 447; SSR 96-7p.

In sum, the Court will not accept Denham's plea to re-consider the evidence in the hope that it will come out in her favor a second time. *See Flener*, 361 F.3d at 447. The ALJ has built an accurate and logical bridge between the evidence and his conclusion, *see Ribaudo*, 458 F.3d at 584, and his conclusion is not "patently wrong," *Powers*, 207 F.3d at 435. Therefore, the ALJ's credibility determination, which is entitled to special deference, *id.*, will not be disturbed.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter judgment in favor of the Commissioner and against Denham.

SO ORDERED.

Enter for February 4, 2010.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge